**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
FERRING B.V.,

                           Plaintiff,

          -against -

FERA PHARMACEUTICALS, LLC, PERRIGO
COMPANY, PERRIGO COMPANY PLC, PERRIGO
COMPANY OF TENNESSEE, and PERRIGO NEW
YORK, INC.,

                          Defendants.
-------------------------------------------------------------------X

**ORDER**

CV 13-4640 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

       On September 3, 2015, the Court issued an oral decision granting, in part, and denying, in part, the May 27, 2015 motions by Plaintiff Ferring B.V. ("Plaintiff" or "Ferring") to compel Defendant Fera Pharmaceuticals, LLC ("Fera") and the Perrigo Defendants ("Perrigo") (with Fera, "Defendants") to respond to certain interrogatories and document requests. *See* Transcript of the Sep. 3, 2015 Motion Hearing/Status Conference ("9/3/15 Tr."); Sept. 3, 2015 Civil Conference Minute Order [DE 138] ¶¶ 1(A)(i)-(iv), (B)(ii) (summarizing the Court's rulings).

       Presently before the Court is Ferring's October 6, 2015 letter motion requesting "further guidance" regarding the Court's rulings. DE 150. Specifically, Ferring asks the Court to "clarify" what it meant when it directed Defendants to produce responsive information and documents relating to Defendants' pharmaceutical products which "directly compete" with Ferring's pharmaceutical products. DE 150 at 1. In Ferring's view, "the Court's use of 'directly compete' means products that directly compete with a general class of products offered by Ferring." *Id.* at 2. Applying this definition, Ferring argues that Defendants should be required to

provide documents and information about all products which Fera intends to or intended to offer in the general fields of urology, gastroenterology, infertility/fertility, gynecology, obstetrics, immunology, endocrinology, oncology, and diabetes insipidus. *See id.* at 2-3, *see also* Pl.'s Ex. A [DE 150-1] (chart of the parties' positions regarding what "directly compete" means as to each category of pharmaceutical products and medical conditions).

Defendants oppose the motion, arguing that the Court defined "directly compete" in its oral decision as those products which "'directly overlap and compete with pharmaceutical products currently offered by Ferring under the Ferring and Ferring Pharmaceuticals trademarks.'" DE 151 at 1 (quoting 9/3/15 Tr. at 11:19-21). Under this definition, Defendants assert that they need only provide information about Fera and Perrigo products which "could be prescribed by a doctor to treat the same medical condition as that treated by a Ferring product currently offered in the marketplace by Ferring." *Id.* at 3.

As a preliminary matter, the Court points out that the term "directly compete" appears in Ferring's pleadings in this consolidated action. As the Court noted during the September 3, 2015 conference, Ferring alleges in both complaints that Defendants have shown an intent to expand their use of the Fera mark "***to directly overlap and compete with pharmaceutical products currently offered by Ferring*** under the FERRING and FERRING PHARMACEUTICALS trademarks, including, but not limited to, pharmaceutical products for the treatment of gastro-intestinal and endocrine disorders." *See* Complaint in CV 13-4640 [DE 1] ¶ 29; Complaint in CV 14-1653 ¶ 35 (emphasis added). In light of these allegations, the Court granted Plaintiff's motions to compel to the extent of compelling Defendants to produce "only those documents that are material to the specific claims in the complaint" – *i.e.*, those "documents which concern

[Defendants'] intent to use th[e] Fera mark on products which directly compete with plaintiff's products." 9/3/15 Tr. 12:11-14, 14:7-8.

At its essence, Plaintiff's motion asks that the Court define a term that **Plaintiff chose to use** in its pleadings. Such a request belongs in a dispositive motion, and the Court will not advise the parties what it believes Plaintiff meant when it alleged in its pleadings that Defendants are using or are planning to use the Fera mark on products which "directly compete" with Plaintiff's products. However, since it is clear that the parties have been unable to come to any agreement as to how this term impacts discovery, the Court will provide some limited further guidance.

As the Court stated in its oral decision, information about Defendants' plans to sell or distribute competing pharmaceutical products may be relevant to the proximity of the products factor under the eight-factor test set forth in *Polaroid Corp. v. Polaroid Elec. Corp.*, 287 F.2d 492 (2d. Cir. 1961). *See* 9/3/15 Tr. at 10:4-10. "This factor focuses on whether the two products compete with each other." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 458 (2d Cir. 2004) (quoting *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 582 (2d Cir. 1991)). As Ferring points out in its motion, "direct competition is not required for this factor." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, No. 12 CIV. 7992, 2014 WL 185222, at *12 (S.D.N.Y. Jan. 16, 2014) (citing *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 150 (2d Cir. 2003)); *see Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 396 (2d Cir. 1995) ("'[D]irect competition between the products is not a prerequisite to relief.") (quoting *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 257 (2d Cir. 1987)). Rather, the "concern with product proximity relates to 'the likelihood that customers may be confused as to the source of the products, rather than as to the products themselves.'" *Guthrie Healthcare Sys.*, 2014 WL 185222, at *12 (quoting *Spring Mills, Inc. v.*

3

*Ultracashmere House*, *Ltd.*, 689 F.2d 1127, 1134 (2d Cir. 1982)) (internal quotation marks omitted); *see also DC Comics Inc. v. Reel Fantasy, Inc.*, 696 F.2d 24, 26 (2d Cir. 1982) (quoting *Am. Intern. Group, Inc. v. London Am. Intern. Corp.*, 664 F.2d 348, 351 (2d Cir. 1981)) ("[L]ikelihood of confusion is a question of fact as to the probable or actual actions and reactions of prospective purchasers of the goods or services of the parties.").

The Second Circuit has emphasized that "'[t]o the extent goods (or trade names) serve the same purpose, fall within the same general class, or are used together, the use of similar designations is more likely to cause confusion.'" *Savin*, 391 F.3d at 458(quoting *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 582 (2d Cir. 1991)). Thus, in assessing the proximity of the products factor, "'the court may consider whether the products differ in content, geographic distribution, market position, and audience appeal.'" *Id.* at 458-59 (quoting *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993)) (citing *Arrow Fastener Co.*, 59 F.3d at 396) (holding that customers were not likely to be confused when both parties sold staplers in the same stores, but one party sold a pneumatic stapler and the other a lightweight small stapler).

This principal appears to form the crux of the parties' continuing dispute. Plaintiff asserts that, "[f]or there to be infringement, the products are generally considered to be in the same general class when they ***can be used by the same patient or prescribed by the same physician***. It is not a question of substituting one product for another." DE 150 at 2 (emphasis added). Plaintiff provides the following example to illustrate its point:

> For example, physicians and patients can have products from different companies used together or separately to treat an issue. An example is infertility when a first drug is used to promote ovulation, a second drug is used to assist in implantation of the egg, and a third drug is used to treat pregnancy related nausea. All of these different products can come from different companies, but are in the same general class and provide the potential for a likelihood of confusion when similar trademarks are used.

4

*Id.* Plaintiff therefore proposes that "the Court's use of 'directly compete' means products that directly compete with the general class of products offered by Ferring." *Id.*

Defendants, on the other hand, contend that "***pharmaceutical prescription drugs that do not treat the same medical condition do not serve the same purpose*** and therefore, they do not compete for purposes of the proximity of goods factor." DE 151 at 2 (emphasis added). Defendants assert that "Ferring's argument that prescription drug products compete when they can be used by the same patient or prescribed by the same physician eviscerates the test for product proximity by ignoring the function and purpose of the drug products in question." *Id.* According to Defendants, "under Ferring's proposal – all prescription drugs compete, regardless of their indications or the medical conditions for which doctors can prescribe them. Such a boundless definition is of course contrary to existing case law and common sense." *Id.* at 3.

As noted, Plaintiff has included a chart outlining that parties' positions regarding what "directly compete" means with respect to specific medical conditions and pharmaceutical products at issue in this litigation. *See* DE 150-1. The Court declines to rule on the each of the specific definitions outlined in the chart. The Court points out that the question of whether there is a likelihood of confusion – and, by extension, whether there is a proximity between products – involves a "fact-intensive analysis" that typically must be resolved by the district court on summary judgment or by a jury. *The Name LLC v. Arias*, No. 10 Civ. 3212, 2010 WL 4642456, at *5 (S.D.N.Y. Nov. 16, 2010); *see Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 479 (2d Cir. 1996); *GMA Accessories, Inc. v. Croscill, Inc.*, No. 06 CIV. 6236, 2007 WL 766294, at *2 (S.D.N.Y. Mar. 13, 2007) (holding that "a reasonable factfinder could reach differing conclusions regarding the third factor, the proximity of the products"). If the Court were to define what "directly compete" means at this juncture with respect to the specific products and/or

5

categories of medical conditions at issues here, as Plaintiff asks it to do, the Court would come decidedly close to assessing the merits of whether the proximity of the products factor has been satisfied for each product/category. To engage in such an exercise would be inappropriate at this stage of the litigation where there is no dispositive motion pending before the Court.

However, based on its review of the parties' arguments and the relevant case law, the Court does find that Plaintiff's proposed definition of "directly compete" as pharmaceutical products which "can be used by the same patient or prescribed by the same physician" is overbroad. As Defendants point out, Plaintiff has provided no case law to support this definition.

The Court has found little case law addressing how courts analyze whether pharmaceutical products "serve the same purpose" under the proximity of the product factor.[1] However, one Southern District of New York case cited by Defendants – *Pfizer Inc. v. Astra Pharmaceutical Products, Inc.*, 858 F. Supp. 1305 (S.D.N.Y. 1994) – provides some guidance on the issue. In *Pfizer*, the court noted that the proximity of the products inquiry concerns "whether it was likely that ***the prescribing physician***" confused the origin of the allegedly competing prescription drugs. *Id.* at 1325 (emphasis added). In other words, the court determined that, where the products are prescription drugs, the prescribing physician is the "customer" or "prospective purchaser" for purposes of the likelihood of confusion analysis. The *Pfizer* court next pointed out that both products at issue were "prescription cardiovascular drugs indicated for hypertension and angina and both use an XL suffix," and accepted as true Pfizer's assertion "that in most patients with common hypertension (high blood pressure) and/or angina, use of either product is appropriate." *Id.* Based on these factors, the court determined that "the products

---

[1] Defendants urge that "[c]ase law in the area of antitrust litigation is also helpful in defining the relevant competitive market for pharmaceutical products." DE 151 at 2 (citing several antitrust cases). However, resorting to antitrust law is not necessary at this time.

compete," but "an analysis of whether there is competitive proximity for purposes of determining likelihood of confusion must be made in the context of" the first two *Polaroid* factors – *i.e.*, "(1) [the] strength of the XL mark and (2) the manner in which the products are presented to prescribing physicians." *Id.*

From *Pfizer*, the Court extracts the following principles regarding competitive proximity which are applicable here. First, where the allegedly competing products are prescription drugs, the proximity of the products inquiry looks to whether the prescribing ***physician*** would be confused as to the source of the products. *See id.* Second, to determine whether the prescription drugs compete, courts consider (1) whether the drugs are designed or marketed to treat the same medical conditions, diseases, etc., and (2) whether patients could be appropriately prescribed both of the competing drugs to treat those medical conditions, diseases, etc. *See id.*

The Court expects that these principles provide sufficient guidance for the parties to resolve their disputes over the interrogatories and document requests outlined in Plaintiff's motion. *See* DE 150. The Court is directing the parties to conduct a further meet-and-confer by February 8, 2016 to address those disputed demands in light of the instant decision. Any responses and/or documents which are to be exchanged as a result of that meet-and-confer are to be produced by February 15, 2016. The Court expects the parties to exert a genuine effort to resolve their remaining disputes, since the Court does not intend to entertain any further requests for judicial intervention as to the issues raised in Plainitff's motion or addressed in this Order. If the Court finds that any party is not acting in good faith, the Court will take appropriate action.

**SO ORDERED.**

Dated: Central Islip, New York
       January 26, 2016
7

/s/ A. Kathleen Tomlinson

A. KATHLEEN TOMLINSON
U.S. Magistrate Judge