**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
FERRING B.V.,

                     Plaintiff,

      -against -

FERA PHARMACEUTICALS, LLC, PERRIGO
COMPANY, PERRIGO COMPANY PLC, PERRIGO
COMPANY OF TENNESSEE, and PERRIGO NEW
YORK, INC.,

                     Defendants.
-------------------------------------------------------------------X

**ORDER**

CV 13-4640 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      Presently before the Court is the letter motion by Plaintiff Ferring B.V. ("Plaintiff" or "Ferring") seeking to compel Defendant Fera Pharmaceuticals, Inc. ("Fera") "to certify its document production, collection and production activity so that it can be determined if Fera has met its discovery obligation." DE 152. According to Plaintiff, Fera's ESI collection and production efforts have been "insufficient," particularly because "Fera has not produced any documents from at least the following key custodians: Frank DellaFera, Cecilia Carfora, Phillip Hammer, Annadurai Dharmarajan, and Stephanie Tremonte." *Id.* at 2. Plaintiff asserts that, "[b]ecause Fera has failed to produce information from key custodians, or any explanation why documents have not been produced," Fera should be ordered to certify its document production and provide an affidavit of a person with knowledge answering specific inquiries set forth in Plaintiff's motion. *Id.* at 2-3. Plaintiff also states that, if Fera is "unable to produce or explain why all responsive documents have not been produced" or to properly certify its ESI production,

Plaintiff "respectfully reserves the right to seek sanctions, including but not limited to sanctions related to spoliation." *Id.* at 3.

Fera opposes Plaintiff's motion, arguing that it "has substantially complied with every single discovery vehicle employed by Ferring to provide discovery in the present litigation" and, as a result, has "produced nearly 12,000 pages which constitute a minimum of 800 documents." DE 153 at 1. Fera states that in searching for ESI responsive to Plaintiff's discovery demands, it identified "five (5) key repositories," including: Frank DellaFera, Susan McDougal, Cecilia Carfora, David Cobb (VP of Ophthalmics) and Fera File Share. *Id.* at 2. As for the three additional proposed custodians identified by Plaintiff – Hammer, Dharmarajan and Tremonte – Fera contends that they "would not have been good choices to target for document production" because they are not involved (or have minimal involvement) in decision-making at Fera. *Id.* Fera also notes that it "hired a forensic electronic discovery company for its expertise in harvesting and properly imaging electronically stored data in order to collect and harvest the electronic data from the identified repositories." *Id.* While Fera admits that it encountered "technical difficulties" with its first ESI production, it contends that Plaintiff "is fully aware of the steps that Fera has undertaken to determine whether there was any overlooked equipment in harvesting of electronic data and to obtain and produce the data that was overlooked to close any gaps and solve the problem as soon as humanly possible." *Id.* at 3. At the time Fera filed its opposition, it was still "processing and reviewing" additional responsive documents which had recently been uncovered. *See id.* Fera stated that it planned to produce those documents to Plaintiff "on a rolling basis." *Id.*

On October 27, 2015, the Court deferred ruling on Plaintiff's motion until Fera's counsel (1) advised the Court "of a date certain by which the rolling production of ESI will be completed," and (2) provided responses to the following questions set forth by the Court:

1. What vendor was used by Fera to produce ESI in this case?

2. Who hired the vendor and/or was responsible for that decision?

3. What specific instructions were given to the vendor as to the parameters of the search to be conducted (*e.g.*, timeframe, document locations, etc.)?

4. What attorney(s) physically went to Fera to establish and oversee the criteria for the searches as well as the conduct of the searches themselves?

5. Which officers or employees of Fera were involved in meetings or discussions with the vendor and counsel about the availability of records sought in Plaintiff's document requests?

6. What specific search methods did the vendor utilize?

7. Were search terms used? If so, who was involved in the process of deciding the appropriate search terms?

8. Identify the actual search terms utilized.

9. Identify the specific custodians whose files were searched.

10. Explain the actual manner in which the "harvesting" was completed.

11. Which attorneys and which employees reviewed the search results?

12. Who was responsible for conducting the review of the harvested documents for privilege? Who compiled the privilege log?

13. Provide a bullet point list of the topic areas of documents harvested and produced to Plaintiff.

DE 154.

On November 4, 2015, Fera provided its "Substantive Responses to the Court's Inquiries" ("Substantive Responses") via hand delivery. On November 9, 2015, the Court issued an Order stating, *inter alia*, that it expected Fera's "response to be filed on ECF since the other

parties are entitled to know the methodology and manner of the ESI production undertaken by Fera." DE 157. The Court also noted that two exhibits attached to Fera's response — "Fera Search Terms" (Ex. A) and "Topic Areas of Documents Produced" (Ex. B). — had been stamped "Confidential Response" and "This Document Contains Attorney Work Product." *Id.* (internal quotation marks omitted). The Court therefore directed Fera's counsel "to redact the materials as to any claim of work product privilege" and to file Fera's response on ECF "along with the redacted version of the materials submitted by hand to the Court." *Id.* The Court also stated that, "[t]o the extent that the attachments are covered by the Stipulation and Order of Confidentiality 'so ordered' by the Court on June 5, 2014, the Court will grant an application to file the redacted attachments under seal, accessible only to the Court and the parties." *Id.*

Fera thereafter filed its Substantive Responses and redacted versions of the two exhibits on ECF. DE 158. Upon reviewing Fera's submissions (including the unredacted exhibits), the Court is satisfied that Fera has implemented procedures for the preservation, collection and production of documents which are sufficient to meet its discovery obligations under Federal Rule of Civil Procedure 26. The Court also finds that Fera has adequately explained its decision not to harvest data from Hammer, Dharmarajan, and Tremonte, the three potential custodians Plaintiff identified in its motion. In short, the Court sees no basis at this time for imposing sanctions based on spoliation.

However, the Court takes issue with Fera's decision to redact the two exhibits annexed to Fera's Substantive Responses. The Court notes that these exhibits contain information specifically requested in the Court's October 27, 2015 Order – namely, "[a] list of the comprehensive search terms utilized" by Fera (Ex. A), and "[a] non-exhaustive list of topic areas of documents produced" to Plaintiff by Fera (Ex. B). DE 158. However, the exhibits filed on

ECF have been entirely redacted on the grounds that they contain "Attorney Work Product – Material Prepared During and in the Course of Litigation." *Id.*

The attorney-work product privilege "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial.'" *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003)). The material at issue here – *i.e.*, Fera's list of search terms and list of document production topic areas – may have been prepared by Fera's counsel as part of this ongoing litigation. *See id.* However, the Court **directed** Fera to provide this information in response to its October 27, 2015 Order because, as the Court later stated in its November 9, 2015 Order, Plaintiff is "entitled to know the methodology and manner of the ESI production undertaken by Fera." DE 154, DE 157.

It is clear to the Court that, for reasons not explained its submissions, Fera elected not to disclose to Plaintiff what ESI search terms it used in making its production or the topic areas of materials Fera has already harvested and produced to Plaintiff. *See generally* DE 154. Yet, this is precisely the type information which is generally shared by counsel in complex civil litigation cases so that they may reach an agreement regarding the scope of production of ESI. Counsel in this case clearly never made such an effort here. The Court notes that the parties were already disputing the scope of ESI production during their first status conference before this Court on December 6, 2013, *see* DE 26 ¶ 4, which perhaps explains why search terms and other relevant ESI-related issues were not addressed in the parties' ESI Agreement "so ordered" by the Court on February 6, 2014, *see* DE 36. Ultimately, Fera's refusal to reveal this information to Plaintiff speaks to the state of relations between the parties and explains Plaintiff's impetus for making

the instant motion to compel Fera to certify its ESI production. The Court further notes that on reviewing both the preliminary and disputed positions over an appropriate ESI protocol [DE 23, DE 24] and the eventual ESI Agreement [DE 36], the parties spent 99% of their time and effort on the technical aspects of the production itself and virtually no time on the substance of what was to be produced. The norm in these cases is that counsel for both sides review and agree in advance on the parameters of the search, on any search terms to be used, and on the specific custodians whose files are to be searched. *See, e.g.*, *Family Wireless #1, LLC v. Auto. Techs., Inc.*, No. 15-CV-01310, 2016 WL 2930887, at *1 (D. Conn. May 19, 2016); *Long Island Hous. Servs., Inc. v. Nassau Cty. Indus. Dev. Agency*, No. 14-CV-3307, 2015 WL 7756122, at *1, *3-*4 (E.D.N.Y. Dec. 1, 2015); *William A. Gross Const. Associates, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 135–36 (S.D.N.Y. 2009). Why that was done unilaterally in this case remains a mystery to the Court and accounts for the fall-out from that decision. Moreover, the topic areas of documents to be produced are presumably formulated based on the demands served by the opposing party and are not a secret.

Based on the foregoing analysis, the Court finds that it was improper for Fera to redact the exhibits to its Substantive Responses based on attorney-work product privilege. The information is not privileged, although it may well be confidential. Accordingly, Fera is directed to file on ECF the unredacted copies of Fera's Exhibit A and Exhibit B which were previously hand-delivered to the Court by Fera's counsel. These exhibits are to be docketed under seal with the Court's permission so as to protect any information covered by the Stipulation and Order of Confidentiality in place in this matter. *See* DE 157.

Finally, Fera states in its Substantive Responses that it expected "rolling document production resulting from the latest harvesting" to be completed and served on Plaintiff by

November 4, 2015. *See id.* Within seven (7) days of this Order, Fera's counsel shall file a letter certifying that its production has been completed and that Fera has produced or identified as privileged all documents responsive to Plaintiff's discovery demands. *See generally Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 90-CV-7811, 1994 WL 698298, at *2 (S.D.N.Y. Dec. 13, 1994) (granting application for an order requiring a non-party to certify the completeness of its production).

**SO ORDERED.**

Dated: Central Islip, New York
September 27, 2016

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge